**Sara STUMP and Andrew M. Ocrant, Plaintiffs,**

v.

**Daryl G. GATES, individual and in official capacity as former Chief of Police of Greenwood Village Police Dept., Diane J. Sexton, individual and in official capacity as Detective of Greenwood Village Police Dept., Sueann Ocrant, individually, Dr. Jill Gould, official capacity as Coroner of the Arapahoe County Coroner's Office and the Arapahoe County Coroner's Office, William Kohnke, official capacity as Chief of Police of Greenwood Village Police Dept., and Greenwood Village, a municipality, Defendants.**

No. 91–C–0509.

United States District Court, D. Colorado.

Oct. 31, 1991.

Phillip Lowery, Denver, Colo., for plaintiffs.

Daniel R. Satriana, Jr., Denver, Colo., Jane B. Garrow, Englewood, Colo., Lawrence D. Stone, Denver, Colo., for Gates, Sexton, Kohnke, Barnard and City of Greenwood Village.

John McKendree, Denver, Colo., for Sueann Ocrant.

L. Cary Unkelbach, Littleton, Colo., for Gould.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiffs Sara Stump and Andrew Ocrant commenced this action asserting claims under 42 U.S.C. § 1983 for denial of the right of access to the courts (first claim), conspiracy (second claim) and defamation (third claim). Plaintiffs further assert pendent state law claims for civil conspiracy (fourth claim), gross negligence (fifth claim), defamation (sixth claim) and outrageous conduct (seventh claim). All claims arise out of acts allegedly committed in Colorado.

Defendants are: (1) Sueann Ocrant; (2) the Arapahoe County (Colorado) Coroner's Office, and Dr. Jill Gould in her official capacity as Arapahoe County Coroner (col-

lectively "Arapahoe County"); and (3) the City of Greenwood Village, Rollin Barnard in his official capacity as the City of Greenwood Village's Mayor, the Greenwood Village Police Department, Daryl Gates individually and in his official capacity as the police department's former chief, William Kohnke in his official capacity as the police department's current chief, and Diane Sexton individually and in her official capacity as a Greenwood Village Police Department detective (collectively "Greenwood").

Pursuant to Fed.R.Civ.P. 12(b)(6), Sueann Ocrant, Arapahoe County and Greenwood separately have moved to dismiss the plaintiffs' claims and action. The City of Greenwood Village further has moved to strike the plaintiffs' prayer for punitive damages sought under the § 1983 claims. Plaintiffs have responded by opposing the motions to dismiss, and by withdrawing their prayer for punitive damages.

The parties have fully briefed the issues and oral argument would not materially facilitate the decision process. Jurisdiction is alleged to exist under 28 U.S.C. §§ 1331 and 1343, as well as this court's pendent jurisdiction.

*I. Facts Alleged in Complaint.*

In their amended complaint, the plaintiffs allege the following facts. On May 20, 1984, Sueann Ocrant found her husband Lawrence Ocrant lying in his bed on his left side. Dried blood trailed from a hole in his right temple. In Ocrant's right hand was a nickel-plated revolver positioned near his face.

Responding to a call from Sueann Ocrant, Greenwood Village police officer N.S. Meneses arrived at about 10:28 a.m. at the home of Lawrence and Sueann Ocrant. When he checked Lawrence Ocrant, Meneses discerned no vital signs. Meneses radioed for assistance, and Greenwood Village police chief Daryl Gates arrived at about 10:35 a.m. Detective Diane Sexton arrived shortly thereafter.

After his arrival, Gates instructed Meneses, who was controlling entry into the home, not to allow the County Coroner to enter until Gates approved his entry.

Arapahoe County deputy coroner Ken Wilks arrived at the home at approximately 10:48 a.m. When he was denied entry into the Ocrant house, Wilks summoned Chief Deputy Coroner Gabe Goldsmith, who arrived at approximately 11:08 a.m. Gates allowed Goldsmith immediate entry, and about fifteen minutes later, allowed Wilks to enter. After an examination, Wilks pronounced Lawrence Ocrant dead.

Gates supervised the investigation, but it was conducted primarily by Sexton and police captain Billy Davis. The police initially took from the home as evidence a nickel-plated Smith & Wesson .32 caliber revolver, three cartridges, a spent bullet casing, a cassette tape found in Lawrence Ocrant's study and linen from his bed.

At 11:00 a.m. Sueann Ocrant was transported to Swedish Medical Center (Swedish) for observation. One-half hour later Lawrence Ocrant's body was taken to the Arapahoe County Coroner's Office located at Bullock Mortuary. One hour later Gates and Sexton left the house to meet with Sueann Ocrant at Swedish.

Following her release from Swedish, Sueann Ocrant went to a friend's home where Gates and Sexton met with her. Sueann Ocrant informed them that a second gun was in her house. Gates and Sexton then returned to the house and retrieved the second gun.

On May 23, 1984, Lawrence Ocrant's body was cremated. The Greenwood Village Police Department and the Arapahoe County Coroner's Office listed the death as a possible suicide. The cause of death later was reported in the media as suicide.

Plaintiffs assert that the investigation was deficient in the following respects: (1) the Arapahoe County Coroner was initially barred from entering the Ocrant home on May 20, 1984; (2) no autopsy was ordered or performed; (3) ballistics tests were not ordered or performed; (4) Sueann Ocrant was not interviewed by the police until May 28, 1984, eight days after her husband's death; (5) Lawrence Ocrant's hands were not bagged to preserve evidence for a trace metal detection test (TMDT); (6) the re-

sults of the TMDT performed on Lawrence Ocrant were not compared to the weapon found in his hand; (7) no TMDT or antimony testing was performed on Sueann Ocrant; (8) no fingerprint testing for comparison to fingerprints other than Lawrence Ocrant's was performed; (9) at Sueann Ocrant's request, the two guns and other evidence seized from the Ocrant home were destroyed by the Greenwood Village Police Department on June 1, 1984.

Alleged improprieties in the investigation were reviewed by the 1989 Arapahoe County Statutory Grand Jury. On December 14, 1989, the grand jury issued a report, but did not make it public.

On June 14, 1990, Chief Judge Joyce Steinhardt of Colorado's Eighteenth Judicial District ordered disclosed to the plaintiffs a one line portion of the grand jury report concluding that Lawrence Ocrant's death was a homicide. Pursuant to Colo. Rev.Stat. § 24–10–109, the plaintiffs notified the defendants of their intent to sue on June 20, 1990. On March 29, 1991, the plaintiffs commenced this action.

## II. Analysis.

Pursuant to Fed.R.Civ.P. 12(b)(6), Greenwood, Arapahoe County and Sueann Ocrant separately have moved to dismiss the plaintiffs' claims and action. Defendants' arguments substantially duplicate one another. I first address the defendants' arguments directed to the plaintiffs' federal claims and thereafter those seeking dismissal of the pendent state tort claims.

In considering a Rule 12(b)(6) motion, the complaint must be construed liberally, *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and its factual allegations must be assumed to be true. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Dismissal of a claim is improper unless it appears beyond doubt that the plaintiffs can prove no set of facts that would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### A. Defendants' Motions Re Federal Claims.

In their amended complaint, the plaintiffs assert three claims under 42 U.S.C. § 1983. Pursuant to Fed.R.Civ.P. 12(b)(6), the defendants have moved to dismiss each claim, arguing: (1) that neither the Greenwood Village Police Department nor the Arapahoe County Coroner's Office is a "person" within the purview of § 1983 (Greenwood's and Arapahoe County's motions, respectively); (2) that the plaintiffs have failed adequately to state any of the three § 1983 claims asserted (all defendants' motions); (3) that the § 1983 claims are time barred (Arapahoe County's and Sueann Ocrant's motions); and (4) that Gates and Sexton are qualifiedly immune from § 1983 liability (Greenwood's motion).

As preliminary matters, I note that Greenwood originally moved to dismiss the official capacity claims asserted against defendants Kohnke and Barnard. Subsequently, in open court, the plaintiffs stipulated to dismiss their claims and action as against Kohnke, Barnard and Gould. That stipulated motion was granted. Accordingly, Greenwood's motion to dismiss these official capacity claims will be denied as moot.

I further note that the plaintiffs assert claims against Gates in his official capacity as the *former* chief of the Greenwood Village Police Department. Because Gates no longer has an official capacity, the official capacity claims against Gates must be dismissed. *See Kentucky v. Graham*, 473 U.S. 159, 166 n. 11, 105 S.Ct. 3099, 3105, n. 11, 87 L.Ed.2d 114 (1985); *Brandon v. Holt*, 469 U.S. 464, 470 n. 18, 105 S.Ct. 873, 877 n. 18, 83 L.Ed.2d 878 (1985). Plaintiffs shall amend the case caption accordingly.

*1. Whether the Greenwood Village Police Department and Arapahoe County Coroner's Office Are Section 1983 "Persons."*

▬▬▬ Greenwood and Arapahoe County respectively assert that neither the Greenwood Village Police Department (police department) nor the Arapahoe County Coro-

ner's Office (coroner's office) is a "person" within the meaning of § 1983.[1]

While Greenwood concedes that the City of Greenwood Village is a proper defendant potentially liable under § 1983 for the acts of its police department personnel, (Greenwood's supplemental brief, p. 3), it notes that the police department is merely the city's agent established under the Greenwood Village City charter to perform the city's policing functions. Because the police department is not a municipal entity capable of suing or being sued under Colo. Rev.Stat. § 31–15–101(1)(b), Greenwood argues that the police department is not a proper party.[2] *Id.*

In *Monell v. Dept. of Social Services,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), the United States Supreme Court held that municipalities and other local government units are "persons" to whom § 1983 applies. In *Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), the Court explained that, under *Monell,* asserting an official capacity suit against a city department's official is sufficient to name the municipality itself. The Court there stated:

> "The [*Monell*] suit was nominally against the city's Department of Social Services, *but that Department had no greater separate identity from the city than did the Director of the Department when he was acting in his official capacity.* For the purposes of evaluating the city's potential liability under § 1983, our opinion clearly equated the actions of the Director of the Department in his official capacity with the actions of the city itself." *Id.* at 472 and n. 21, 105 S.Ct. at 878 and n. 21 (emphasis added).

In the post-*Monell* era, however, courts have dismissed § 1983 claims that have named and sought to impose liability di-

rectly upon municipal and county police departments. *See, e.g., Boren v. City of Colorado Springs,* 624 F.Supp. 474, 479 (D.Colo.1985) (city's police department, as merely the vehicle through which city fulfills its policing functions, not a proper party); *Stratton v. Boston,* 731 F.Supp. 42, 46 (D.Mass.1989) (action dismissed as against city police department that is not an independent legal entity); *Reese v. Chicago Police Dept.,* 602 F.Supp. 441, 443 (N.D.Ill.1984) (Chicago Police Department and Cook County Attorney's Office have no legal existence independent of city and county, and therefore are not suable entities); *see also Martinez v. Winner,* 771 F.2d 424, 444 (10th Cir.1985) (§ 1983 claims dismissed because City of Denver Police Department not a separate suable entity), *remanded to consider mootness,* 475 U.S. 1138, 106 S.Ct. 1787, 90 L.Ed.2d 333 (1986), *on remand,* 800 F.2d 230 (10th Cir.1986).

The above authorities persuade me that the Greenwood Village Police Department and the Arapahoe County Coroner's Office are not "persons" against whom § 1983 claims may be asserted. The police department simply does not exist as a separate legal entity independent of the City of Greenwood Village under whose charter it was created. Similarly, the coroner's office is merely a department of county government organized to perform one aspect of the county's governmental functions, not a separate governmental unit existing independently of Arapahoe County itself.

My conclusion that the police department and coroner's office are not § 1983 persons is entirely consistent with *Monell.* There the United States Supreme Court noted that the question whether local government entities are "persons" is controlled by Congress' intent. *Monell,* 436 U.S. at 664, 98 S.Ct. at 2022. The Court therefore extensively reviewed the legislative history sur-

---

1. Section 1983, 42 U.S.C., provides in pertinent part that:
"Every *person* who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be *subjected,* any *citizen of the United States* or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...." (emphasis added).

2. Although not as detailed, Arapahoe County's arguments duplicate Greenwood's. (*See* Arapahoe County's supplemental brief, p. 2).

rounding enactment of the Civil Rights Act of 1871 § 1 to determine whether its general language describing "persons" liable for civil rights violations extends beyond natural persons. *Id.* The Court concluded that because municipal *corporations* in 1871 were included within the phrase "bodies politic and corporate," Congress intended that local governments be considered "persons" subject to liability under § 1983. *Id.* at 688, 689 n. 53, 98 S.Ct. at 2034, 2035 n. 53. That conclusion rested on the fact that municipalities through their official acts can inflict the wrongs intended to be remedied by the civil rights laws, just as natural persons can. *Id.* at 685–86, 98 S.Ct. at 2033. Indeed, the Court noted that the legal status of municipal corporations as "artificial person[s]" routinely had subjected them to suit in federal courts for more than 100 years. *Id.* at 687–88 and n. 50, 98 S.Ct. at 2034 and n. 50. The Court thus made clear that a separate identity as a body politic or corporate is essential to § 1983 "person" status. *See id.* at 690 n. 54, 98 S.Ct. at 2035 n. 54 (local government officials sued in official capacities are "persons" under § 1983 in those cases in which *a local government is suable in its own name*).

Under Colorado law municipalities and counties, not their various subsidiary departments, exist as "bodies corporate and politic" empowered to "sue and be sued." *See* Colo.Rev.Stat. § 31–15–101(1)(a), (b) and § 30–11–101(1)(a). Indeed, neither police departments nor coroners' offices themselves have the capacity to commit acts depriving individuals of civil rights; rather it is the acts of municipal and county employees, performed under color of state law, and pursuant to a policy or custom of the employing municipal corporation or county, that subject these public entities to liability.

■ As the United States Supreme Court noted in *Brandon,* local government *departments* have no greater separate identity from cities than do their officials when they are acting in their official capacities. 469 U.S. at 472 and n. 21, 105 S.Ct. at 878 and n. 21. Thus for purposes of analyzing a municipality's potential liability under § 1983, acts of municipal department officials in their official capacity are equated with the acts of a municipality itself. *Id.; see also Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55. Therefore, although some courts have overlooked it, naming a municipal *department* as a defendant is not an appropriate means of pleading a § 1983 action against a municipality.[3] Nor can municipal departments, enjoying no status independent of the municipality itself, be held separately liable for § 1983 damages, any more than could a municipal official sued in an official capacity. *Brandon,* 469 U.S. at 472, 105 S.Ct. at 878.

I conclude that the Greenwood Village Police Department and the Arapahoe County Coroner's Office are not "persons" for purposes of § 1983. Accordingly, to the extent that the plaintiffs seek to impose § 1983 liability directly on those named defendants, their § 1983 claims must be dismissed.[4]

## 2. Failure to State Section 1983 Claims.

Each of the defendants argues, as to each of the three § 1983 claims asserted, that the plaintiffs have failed to state a claim for which relief can be granted, and therefore these three claims must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

3. As the United States Supreme Court repeatedly has stated, a § 1983 action appropriately is pleaded against a municipality either by naming the municipality itself or by naming a municipal official in his or her official capacity. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 2311, 105 L.Ed.2d 45 (1989); *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Brandon,* 469 U.S. at 471–72, 105 S.Ct. at 877–78; *Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. at 2035 n. 55 (1978). Naming either is sufficient. Naming both is redundant.

4. Having stipulated to dismissal of the action against Gould in her official capacity, the plaintiffs are granted leave promptly to amend their complaint to properly name as a defendant the Board of County Commissioners of Arapahoe County, Colorado.

### a. First Claim.

Plaintiffs' first § 1983 claim asserts denial of access to the courts in violation of Article IV and the First and Fourteenth Amendments to the United States Constitution. Plaintiffs' argument is that their ability to commence a wrongful death action has forever been precluded by the defendants' acts, under color of state law, in destroying evidence and deliberately failing to conduct an appropriate investigation into Lawrence Ocrant's death. (Amended complaint, p. 7–8).

The right of access to the courts is basic to our system of government, and is well recognized as one of the fundamental rights protected by the Constitution. As early as 1885, the United States Supreme Court declared that all persons:

> "should have like access to the courts of the country for the protection of their persons and property, [and] the prevention and redress of wrongs ... [N]o impediment should be interposed to the pursuits of anyone except as applied to the same pursuits by others under like circumstances ... [N]o greater burdens should be laid upon one than are laid upon others in the same calling and condition...." *Barbier v. Connolly,* 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923 (1885); *see also Truax v. Corrigan,* 257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254 (1921).

In *Chambers v. Baltimore & O.R. Co.,* 207 U.S. 142, 148, 28 S.Ct. 34, 35, 52 L.Ed. 143 (1907), the Supreme Court characterized the right of judicial access in the following terms:

> "The right to sue and defend in the courts is the alternative to force. In an organized society it is the right conservative of all other rights, and lies at the foundation of orderly government. It is one of the highest and most essential privileges of citizenship, and must be allowed by each state to the citizens of all other states to the precise extent that it is allowed to its own citizens. Equality of treatment in this respect is not left to depend upon comity between the states, but is granted and protected by the Federal Constitution."

The right of access to the courts most often is regarded as having its constitutional origins in the Due Process clauses of the Fifth and Fourteenth Amendments. *Barbier* and *Truax, supra; Silver v. Cormier,* 529 F.2d 161, 163 (10th Cir.1976); *Doe v. Schneider,* 443 F.Supp. 780, 784 (D.Kan. 1978). Another recognized constitutional basis for the right is the Privileges and Immunities Clause of Article IV, Section 2, providing that "the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states." *See, e.g., Chambers,* 207 U.S. at 148, 28 S.Ct. at 35. The United States Supreme Court has found in the First Amendment a third basis for the right. *See California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972).

The constitutional right of access to the courts has been invoked in various contexts. The First Amendment aspect of the right has arisen almost exclusively in cases involving unions and other organizations that have adopted plans to provide legal services to their members. *See, e.g., United Mine Workers v. Illinois State Bar Asso.,* 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967); *Brotherhood of Railroad Trainmen v. Virginia,* 377 U.S. 1, 84 S.Ct. 1113, 12 L.Ed.2d 89 (1964); *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). State burdens on a civil litigant's right to commence a civil action also have been found to violate the right of judicial access. *See, e.g., United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973) (filing fee for bankruptcy petition burdens right of access); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (filing fee for divorce action).

On several occasions, the United States Supreme Court has struck down, as violating the right of judicial access, regulations and practices that interfered with prisoners' abilities to petition the courts. In *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), the issue was whether an inmate had the right to seek the assistance of other inmates in prepar-

ing a writ of habeas corpus. The United States Supreme Court concluded that "it is fundamental that access of prisoners to the courts for the purpose of presenting their complaints may not be denied or obstructed." *Id.* at 485, 89 S.Ct. at 749. *See also Ex parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640, 641, 85 L.Ed. 1034 (1941) (parole board screening of prisoners' writs violates right of access).

The right recognized in *Johnson v. Avery, supra,* was extended to actions under the Civil Rights Act of 1871 in *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974).[5] The United States Supreme Court there stated:

> "The right of access to the courts upon which *Avery* was premised, is founded in the Due Process Clause and assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. It is futile to contend that the Civil Rights Act of 1871 has less importance in our constitutional scheme than does the Great Writ."

These cases plainly demonstrate that access to the courts is a right guaranteed and protected by the United States Constitution from burden or interference by the state and its agencies in a broad spectrum of factual settings. Citing *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir.1983), the plaintiffs assert that the right of judicial access is violated when, as here alleged, the opportunity to commence a wrongful death action is denied.

In *Ryland,* the plaintiffs were the parents of a woman allegedly murdered by a local prosecutor. The complaint alleged that, shortly after the murder, the prosecutor contacted the local district attorney who agreed to prevent a full investigation into the woman's death. The prosecutor and district attorney canceled a scheduled autopsy and later prevailed on a coroner who had not examined the body to sign a death certificate listing suicide as the cause of death. Defendants subsequently stymied an investigation into the murder by representing to police that the death had been determined to be a suicide. *Ryland,* 708 F.2d at 969.

Plaintiffs in *Ryland* commenced an action in federal district court asserting a § 1983 claim for wrongful interference with their right of access to the courts. The district court granted the defendants' Rule 12(b)(6) motion to dismiss and the plaintiffs appealed. *Id.*

The Fifth Circuit reversed. In concluding that the defendants had burdened the plaintiffs' right of judicial access, the court stated:

> "The defendants' actions could have prejudiced the [plaintiffs'] chances of recovery in state court because the resulting delay would cause stale evidence and the fading of material facts in the minds of potential witnesses. Moreover, it could well prove more expensive to litigate such action. Finally, any interference with a substantive constitutional right, such as the right of access to the courts, may by itself amount to constitutional deprivation...." *Ryland,* 708 F.2d at 975.

The *Ryland* court found inappropriate the trial court's dismissal of a claim asserting merely a *burden* on access to the courts. *Id.* Plaintiffs in the instant case contend that the gravity of the constitutional violation here alleged exceeds that found adequate to state a claim in *Ryland* because their right to commence a state wrongful death action has been permanently foreclosed. (Plaintiffs' response to Greenwood's motion, p. 3).

Defendants do not attempt to distinguish *Ryland* or argue that it was improvidently decided. Rather they argue, citing *Shaw v. Neece,* 727 F.2d 947 (10th Cir.1984), *Singer v. Wadman,* 595 F.Supp. 188 (D.Utah 1982), *aff'd,* 745 F.2d 606 (10th Cir.1984), and *Doe v. Schneider,* 443 F.Supp. 780 (D.Kan.1978), that the instant plaintiffs' claims fail under Tenth Circuit law. Because those cases are clearly distinguishable, I disagree.

---

5. *See also McKay v. Hammock,* 730 F.2d 1367, 1375 (10th Cir.1984) (conduct under color of state law that interferes with right of access to courts gives rise to action under § 1983).

In *Shaw*, the plaintiff was injured by a city-owned truck. He complained that when he was preparing his action against the truck's manufacturer, the defendant city's employees had failed to assist in discovery. He subsequently commenced a § 1983 action asserting a violation of his right of access to the courts. The district court dismissed the action and the Tenth Circuit affirmed, noting that "Shaw was not impeded in any way in bringing the personal injury action" against the truck's manufacturer. *Shaw*, 727 F.2d at 949. In contrast to *Shaw*, however, the plaintiffs here allege that the inadequate investigation into Lawrence Ocrant's death and the destruction of critical relevant evidence permanently precluded their commencing a tort action.

*Singer* was a § 1983 action asserting, *inter alia*, excessive force in an arrest. 595 F.Supp. 188. Plaintiffs there claimed that the defendants' alleged coverup of underlying facts that would have supported a § 1983 action had deprived them of access to the courts. *Id.* at 301. In granting summary judgment for the defendants, the court stated:

"The right of access is not so broad as to include a 'right to know' the facts supporting a possible cause of action.... This is not to say that a coverup could never amount to a violation of due process. *See, e.g., Hampton v. Hanrahan*, [600 F.2d 600 (7th Cir.1979)]. In this court's view, however, the conduct would have to be both deliberate and so egregious as to make a plaintiff's access to the courts virtually meaningless." *Id.* at 302.

This case, unlike *Singer*, is not one in which the plaintiffs assert a right to know facts supporting the instant claims. Rather the plaintiffs here allege that the defendants' deliberate and egregious conduct rendered meaningless any right of access to state courts, facts that, if true, were recognized by the *Singer* court as sufficient to support a right of access claim. *Singer*, 595 F.Supp. at 302. Indeed the fact in *Singer* that the action as to which the right of access was alleged to have

been denied had been filed and actually was proceeding undermined the plaintiffs' assertion that they had been denied access to judicial remedies. *See Doe v. Schneider*, 443 F.Supp. at 787.

For similar reasons, *Doe v. Schneider*, *supra*, is not controlling. As in *Singer*, the *Schneider* plaintiffs alleged a violation of their right to judicial access based on the defendants' failure to disclose facts underlying their pending action. The *Schneider* court correctly noted that the right of access prevents state actors from thwarting availability of the *judicial machinery* to resolve disputes, but does not establish a right to know facts supporting claims asserted in an action already proceeding. *Schneider*, 443 F.Supp. at 787. *Schneider* is thus clearly inapposite.

Based on the above authority and analysis, I conclude that as against the defendants Gates and Sexton, the plaintiffs adequately have stated their first claim under § 1983 asserting denial of the right of access to the courts.

Although the defendants have not raised the issue, it is not clear that, as against the City of Greenwood Village and Arapahoe County, the facts alleged in the complaint are sufficient to state a claim consistent with *Monell* and its progeny. The parties are granted fifteen days from the date of this order to file briefs on that issue together with any appropriate motions. Alternatively, and on condition they so notify the defendants within five days after this order's date, the plaintiffs, within eleven days, may file an amended complaint properly and clearly alleging facts in support of their first claim against the municipal defendants, if such an amended complaint is justified under Fed.R.Civ.P. 11.

■ The question remains whether the first claim is adequately stated as against Sueann Ocrant. Without citing any authority, Sueann Ocrant asserts that the plaintiffs have not pleaded facts alleging that she acted under color of state law in performing the acts asserted. (Sueann Ocrant's brief, p. 9). Facts alleging that a defendant acted under color of state law are essential to pleading a § 1983 claim.

*Meade v. Grubbs,* 841 F.2d 1512, 1526 (10th Cir.1988).

 Private persons jointly engaged with state or local government agents in the challenged conduct are considered to be acting under color of state law for purposes of § 1983 actions. *Dennis v. Sparks,* 449 U.S. 24, 27–28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). One need not be a government officer to act under "color of law." *Dennis,* 449 U.S. at 28, 101 S.Ct. at 186. Rather it is sufficient that he or she willfully participates in joint activity with the government or its agents. *Id.; Newcomb v. Ingle,* 944 F.2d 1534, 1536 (10th Cir.1991); *Lee v. Estes Park,* 820 F.2d 1112, 1114 (10th Cir.1987).

In their first claim the plaintiffs allege generally that the defendants, including Sueann Ocrant, acted under color of state law "individually and collectively in conspiracy" with one another to deprive the plaintiffs of constitutional rights. (Amended complaint, ¶ 49). Because the facts alleged in the complaint, if true, would support a conclusion that Sueann Ocrant acted under color of state law, or conspired with others who did, the plaintiffs' first claim as against her must stand.

#### b. Second Claim.

 Defendants likewise have moved to dismiss the second claim under § 1983, which alleges a conspiracy to conceal the cause of Lawrence Ocrant's death.

 Allegations of a conspiracy may state a viable claim under 42 U.S.C. § 1983. *Dixon v. Lawton,* 898 F.2d 1443, 1449 (10th Cir.1990); *Robinson v. Maruffi,* 895 F.2d 649, 654 (10th Cir.1990). Pleadings asserting such a claim "must specifically present facts tending to show agreement and concerted action." *Sooner Products Co. v. McBride,* 708 F.2d 510, 512 (10th Cir.1983). A § 1983 conspiracy may be stated against a private actor who allegedly conspired with a state actor acting under color of state law to deprive plaintiffs of their constitutional rights. *See, e.g., Dennis v. Sparks,* 449 U.S. 24, 29, 101

S.Ct. 183, 187, 66 L.Ed.2d 185 (1980); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 149–52, 90 S.Ct. 1598, 1604–05, 26 L.Ed.2d 142 (1970).

After reviewing the second claim in the amended complaint, I conclude that its factual allegations are not so vague or conclusory that the plaintiffs could prove no set of facts in support of this claim that would entitle them to relief. Therefore, the motion to dismiss the second claim as against the defendants Gates, Sexton and Sueann Ocrant must be denied.

As to the City of Greenwood Village and Arapahoe County, however, it is unclear whether the plaintiffs' second claim meets the requirements of *Monell* and its progeny. The parties are granted fifteen days from the date of this order to file briefs on that issue together with any appropriate motions. Alternatively, and on the condition that they so notify the defendants within five days, the plaintiffs may amend their complaint within eleven days (if justified by the law and facts), to clearly and properly allege the second claim as against these government defendants.

#### c. Third Claim.

 Plaintiffs' third claim under § 1983 asserts that, by publishing or causing to be published the police report, coroner's report and death certificate stating that Lawrence Ocrant's death was a probable suicide, the defendants "defamed Plaintiffs publicly and discredited their family name and reputation." (Amended complaint, ¶ 62). Plaintiffs' third claim thus appears to assert deprivation of a liberty interest. *Id.* Defendants argue that the third claim fails to state a cognizable constitutional claim for which relief may be granted.

 To plead a liberty interest claim, a plaintiff must allege that the information published was both false and stigmatizing. *Wulf v. Wichita,* 883 F.2d 842, 869 (10th Cir.1989). The nature of the information published must have "the general effect of *curtailing [the plaintiffs'] future freedom of choice or action." Asbill v. Housing Authority of Choctaw Nation,* 726 F.2d 1499, 1503 (10th Cir.1984) (emphasis in original).

Moreover, "it is necessary that the alleged stigmatization be entangled with some further interest, such as the ability to obtain future employment." *Allen v. Denver Public School Bd.*, 928 F.2d 978, 982 (10th Cir.1991); *Melton v. Oklahoma City*, 928 F.2d 920, 926–27 (10th Cir.1991). "Stigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action." *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir.1981). Absent that further interest, a claim asserting stigmatization and reputational damage does not rise to a constitutional level and is best pursued under state tort law. *Siegert v. Gilley*, —— U.S. ——, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991); *Paul v. Davis*, 424 U.S. 693, 710–12, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976); *Allen*, 928 F.2d at 982.

Plaintiffs here assert only that the published statement of their father's death as a suicide "discredited their family name" and caused a "loss of reputation." (Amended complaint, ¶¶ 62, 64). In response to Arapahoe County's motion to dismiss, the plaintiffs similarly assert only that the publication "has lowered the reputation of the plaintiffs...." (Response, p. 8). Plaintiffs' third claim thus fails to assert denial of a constitutionally protected right. Accordingly, the defendants' motions to dismiss the third claim are granted.

### 3. Statute of Limitations.

Arapahoe County and Sueann Ocrant argue that because the plaintiffs had knowledge of many vital facts alleged in the amended complaint no later than August 1984, their § 1983 claims are time barred. Plaintiffs respond that their § 1983 claims accrued on June 14, 1990, the date the Arapahoe County Statutory Grand Jury's conclusion that their father's death was a homicide was disclosed to them. It was only at that time, the plaintiffs assert, that they knew the defendants' acts had deprived them of constitutional rights. Plaintiffs therefore argue that this action was timely filed on March 29, 1991.

Actions under 42 U.S.C. § 1983 are governed by Colorado's residual statute of limitations, Colo.Rev.Stat. § 13–80–102(1)(i) (1987). *McKay v. Hammock*, 730 F.2d 1367 (10th Cir.1984); *E.E.O.C. v. Gaddis*, 733 F.2d 1373, 1377 (10th Cir.1984); *Arvia v. Black*, 722 F.Supp. 644, 646 (D.Colo.1989). The residual statute previously provided a three-year limitations period. *See* Colo.Rev.Stat. § 13–80–108(1)(b) (1973). In 1986, however, that statute was amended to provide a two-year period. *See* Colo.Rev.Stat. § 13–80–102(1)(i) (1987). Thus a three-year limitations period applies to actions that accrued prior to July 1, 1986, the statute's effective date, while a two-year period governs actions accruing on or after that date. *See* 1986 Colo.Sess. Laws § 23, p. 706. The determination of when § 1983 actions accrue is controlled by federal rather than state law. *Robinson v. Maruffi*, 895 F.2d 649, 655 n. 8 (10th Cir. 1990); *Newcomb v. Ingle*, 827 F.2d 675, 678 (10th Cir.1987).

Defendants contend that the plaintiffs' § 1983 claims accrued some six years prior to commencement of this action, and therefore it is barred. Here the gravamen of the action is denial of access to the courts. Research has revealed no federal case defining when such an action accrues, and the parties have cited none. I therefore turn to analogous cases for guidance in determining when the instant action's limitations period commenced running.

In *Newcomb v. Ingle*, 827 F.2d 675 (10th Cir.1987), the Tenth Circuit considered when a § 1983 action asserting an invasion of privacy through an illegal wiretap accrues. The court noted that, on the facts there presented, the statute of limitations might begin running either: (1) when the plaintiff discovered, or with due diligence, could have discovered the illegal wiretap; or (2) when the wrong was committed, subject to possible tolling if the defendant had fraudulently concealed the wrong. *Id.* at 678–79. Because the facts established that the plaintiff had actual knowledge of the wiretap outside the limitations period, and fraudulent concealment was not an issue, the Tenth Circuit held the action time barred without deciding which rule applied. *Id.*

More recently, in *Bath v. Bushkin, Gaims, Gaines and Jonas*, 913 F.2d 817 (10th Cir.1990), an action alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961 *et seq.* through various securities transactions, the Tenth Circuit applied a similar "discovery" rule. Focusing on the "pattern of racketeering" element necessary to a RICO claim, the Tenth Circuit determined that:

> "a civil RICO cause of action begins to accrue as soon as the plaintiff discovers, or reasonably should have discovered, both the existence and source of his injury and that the injury is part of a pattern." *Id.* at 820.

While neither an invasion of privacy nor a RICO violation is here at issue, the above cases, like the second claim here, involved allegations that the defendants had concealed their illegal acts. Those cases reflect the Tenth Circuit's view that where concealment of facts giving rise to the claim is alleged, the limitations period is tolled until the injury and its cause are discovered, or by due diligence should have been discovered. For several reasons, I conclude that the discovery rule governs here where the essence of the claims is that the defendants have wrongfully deprived the plaintiffs of access to judicial remedies.

Certainly, the plaintiffs must know that they have been deprived of judicial access and know the manner of deprivation before the limitations period begins running, unless, of course, reasonable persons in their situation should have had such knowledge.

▬ Defendants argue that mere knowledge of the facts underlying a potential claim, even absent any appreciation of the legal significance of those facts, starts the limitations period running. That generality, however, cannot apply in the instant circumstances, for it ignores the fact that the plaintiffs had no way of knowing that a viable wrongful death claim existed prior to release to them of the Arapahoe County grand jury report's conclusion that Lawrence Ocrant's death was a homicide and not, as at least some of the defendants previously had indicated, a suicide.

The police investigation and coroner's report both had concluded that suicide was the cause of death. Thereafter nearly all relevant evidence of the cause of death was destroyed by one or more of the alleged co-conspirators. To accept the defendants' proposed accrual date, in the instant circumstances, would be to impose upon the plaintiffs an affirmative duty privately to investigate the cause of death and to second guess the official investigation into that death, as well as an obligation to commence an action based on that private investigation shortly thereafter. In short, it would transfer to private individuals the obligation to perform governmental police power functions. Neither law nor logic favors that result.

Indeed, it was not until 1989—five years after Lawrence Ocrant's death—that Arapahoe County convened a grand jury to inquire into alleged improprieties in the initial investigation. Not until June 14, 1990, did the plaintiffs first learn that the grand jury had found the death to be a homicide. Only then did they become aware of any possible grounds for a wrongful death action, grounds that until then had allegedly been wrongfully concealed by the defendants.

▬ For the above reasons, I conclude that the plaintiffs' action alleging denial of the right of access to the courts accrued when the fact of that denial was discovered or, by exercise of reasonable diligence, should have been discovered. Because the plaintiffs did not know, and could not have known, before June 14, 1990, that their right of access to the courts had been denied, the two year limitations period of Colo.Rev.Stat. § 13–80–102(1)(i) is controlling. It follows that the action was timely commenced on March 29, 1991, and I so hold.

### 4. Qualified Immunity.

▬ Greenwood asserts that Gates and Sexton are entitled to qualified immunity from the plaintiffs' § 1983 claims. A government official performing discretionary functions generally is shielded from

liability for damages if his or her conduct did not violate clearly established statutory or constitutional rights of which a reasonable person in that position would have been aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A plaintiff may overcome a public official's qualified immunity by showing that the constitutional rights alleged to have been violated were clearly established at the time of the conduct in issue. *Stewart v. Donges*, 915 F.2d 572, 581 (10th Cir.1990). Whether the law was then clearly established is for the court to determine. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

Prior to the conduct here at issue, access to the courts was recognized as a vital right protected by the United States Constitution. *See, e.g., Singer v. Wadman*, 595 F.Supp. 188, 302 (D.Utah 1982), *aff'd*, 745 F.2d 606 (10th Cir.1984) (deliberate and egregious conduct rendering virtually meaningless a plaintiff's access to courts impinges upon constitutional right of access). *See also Shaw v. Neece*, 727 F.2d 947, 949 (10th Cir.1984) ("Clearly, access to the courts of the United States is a guaranteed constitutional right"); *McKay v. Hammock*, 730 F.2d 1367, 1375 (10th Cir.1984) (conduct under color of state law that interferes with constitutional right of access to courts gives rise to action under § 1983).

Before 1984, at least one court had recognized the right of access in a factual situation startlingly similar to this case. *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983). Indeed, the United States Supreme Court has protected the right of judicial access in a series of cases dating from 1885. (*See supra*, part II(A)(2)(a) of this opinion). I therefore conclude that the right of access to the courts was clearly established at the time of the conduct here alleged. I further conclude that a reasonable person in the position of each of these defendants would have known that the acts alleged in the complaint could preclude the plaintiffs' exercise of that right. Accordingly, Gates' and Sexton's motion to dismiss on qualified immunity grounds is denied.

### B. Defendants' Motions Re State Tort Claims.

Plaintiffs assert state law claims for civil conspiracy (fourth claim), gross negligence (fifth claim), defamation (sixth claim) and outrageous conduct (seventh claim).

Pursuant to Fed.R.Civ.P. 12(b)(6), the defendants have moved to dismiss each of those tort claims, arguing: (1) that the claims are time barred (Sueann Ocrant's and Arapahoe County's motions); (2) that the plaintiffs have not complied with the notice requirements of the Colorado Governmental Immunity Act, Colo.Rev.Stat. §§ 24–10–101 *et seq.*, and that, in any event, the claims are barred by sovereign immunity (Arapahoe County's motion); (3) that the plaintiffs have failed adequately to state any of the tort claims (all defendants' motions); and (4) that this court should decline to exercise pendent jurisdiction (Sueann Ocrant's and Greenwood's motions). Pursuant to Fed.R.Civ.P. 12(e), Sueann Ocrant further has moved for a more definite statement of the fifth and sixth claims.

### 1. Statute of Limitations.

Sueann Ocrant and Arapahoe County argue that the plaintiffs' state tort claims are time barred. Claims for civil conspiracy, gross negligence and outrageous conduct must be filed in court within two years after they accrue. Colo. Rev.Stat. § 13–80–102(1)(a). Defamation claims must be filed within one year after accrual. Colo.Rev.Stat. § 13–80–103(1)(a). These claims accrue on the date both the injury and its cause are known or, by reasonable diligence, should have been known to the plaintiff. Colo.Rev.Stat. § 13–80–108(1).

Awareness (or notice) that Lawrence Ocrant's death was a homicide, not a suicide, as determined by the Arapahoe County grand jury, was a necessary prerequisite to starting the statute of limitations running. Neither the injuries, nor their causes as alleged in those claims, were known or reasonably could have been known prior to disclosure of the grand jury's conclusion on June 14, 1990. (*See* part II(A)(3) of this

opinion, *supra* ). Thus, I conclude that the state tort claims are not time barred.

### 2. *Governmental Immunity.*

■ Arapahoe County asserts: (1) that the plaintiffs have failed to comply with the notice requirements of the Colorado Governmental Immunity Act (the "Act"), Colo.Rev.Stat. §§ 24–10–101 *et seq.;* and (2) that the Act bars the plaintiffs' state tort claims asserted against Arapahoe County.

For the reasons stated in parts II(A)(2) and II(B)(1) of this opinion, I already have concluded that the plaintiffs' state tort claims accrued on June 14, 1990. Plaintiffs provided the relevant governmental entities timely notice of intent to sue on June 20, 1990. (*See* plaintiffs' response to Arapahoe County's motion, Ex. A). That notice provided sufficient information to meet the requirements of Colo.Rev.Stat. § 24–10–109(2). Arapahoe County's motion to dismiss for lack of notice therefore must be denied.

■ Under the Act, public entities are immune from liability for claims which lie in tort or could lie in tort regardless of whether the plaintiff elects to file a tort action or seeks some other form of relief. Colo.Rev.Stat. § 24–10–106(1). The Act provides six exceptions to immunity for particular types of tort claims, but none of them apply here. *Id.*

Citing Colo.Rev.Stat. § 24–10–105, the plaintiffs argue that statutory immunity does not shield Arapahoe County from liability because its tortious conduct was "willful or wanton." (Plaintiffs' response to Arapahoe County's motion, p. 8). Plaintiffs cite no authority recognizing that alleged exception to a public entity's statutory immunity, however, and their proposed reading of the Act is at odds with its plain language. *See* Colo.Rev.Stat. § 24–10–105. Accordingly, Arapahoe County's motion to dismiss the plaintiffs' state tort claims must be granted. For the same reason, the state tort claims asserted against the City of Greenwood Village will be dismissed *sua sponte.*

**6.** Plaintiffs have withdrawn the fifth claim as against Sueann Ocrant, obviating the need to

### 3. *Failure to State Tort Claims.*

#### a. Fourth Claim: Civil Conspiracy.

■ Arguing that the plaintiffs have pleaded insufficient facts, the defendants have moved to dismiss the fourth claim alleging a civil conspiracy. In Colorado, a civil conspiracy claim is stated by allegations that there were:

(1) two or more persons;

(2) an object to be accomplished;

(3) a meeting of the minds on the object or course of action;

(4) one or more unlawful overt acts; and

(5) damages as a proximate result. *Jet Courier Service, Inc. v. Mulei,* 771 P.2d 486, 502 (Colo.1989).

Plaintiffs' fourth claim, as pleaded in the amended complaint, epitomizes the minimal requirements of modern notice pleading. However, liberally construing the complaint and assuming its factual allegations to be true, as I must, *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), it does not appear beyond doubt that the plaintiffs can prove no set of facts supporting this claim that would entitle them to relief. Accordingly, dismissal at this stage of the litigation is unwarranted. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

#### b. Fifth Claim: Gross Negligence.

■ As against Gates and Sexton, the plaintiffs allege as their fifth claim gross negligence in the investigation of Lawrence Ocrant's death.[6] Greenwood has moved to dismiss, arguing that Gates and Sexton owed no legally cognizable duty to the plaintiffs.

■ To recover on a negligence claim, a plaintiff must establish the existence of a legal duty, breach of the duty, causation and damage. *Leake v. Cain,* 720 P.2d 152, 155 (Colo.1986). A negligence claim must fail if it is based on facts under which the law imposes no duty of care upon the defendant. *University of Denver v. Whitlock,* 744 P.2d 54, 56 (Colo.1987).

consider her motion for a more definite statement of the claim.

The legal question whether a duty exists is for a court to decide. *Metropolitan Gas Repair Service, Inc. v. Kulik*, 621 P.2d 313, 317 (Colo.1980).

Plaintiffs cite no authority recognizing that a duty of care is owed by investigating police officers to an alleged crime victim's relatives, and my research reveals none.[7] Indeed the case upon which the plaintiffs primarily rely holds contrary to their position. *See Leake v. Cain*, 720 P.2d at 155 (police officers had *no duty* to protect third parties from acts of intoxicated person).

Even were I to conclude that the existence of a duty in the instant circumstances is arguable, which I do not, this court would not exercise pendent jurisdiction over the fifth claim. As a matter of comity and justice, needless interpretations of state law should be avoided, especially where, as here, there is no existing state law precedent and the state courts could provide a clearer reading of state law. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Plaintiffs' gross negligence claim must be dismissed.

### c. Sixth Claim: Defamation.

In their sixth claim, the plaintiffs allege defamation resulting from the defendants' publication of police and coroner reports that Lawrence Ocrant's death was a suicide. Those publications allegedly have impaired the plaintiffs' reputation and standing in the community. (Amended complaint, ¶ 79). Defendants argue that the sixth claim must be dismissed because: (1) the publications were not of and concerning the plaintiffs; and (2) no special damages have been pleaded.

A defamatory communication tends to subject a person to public hatred, contempt or ridicule, or causes him or her to be shunned or avoided. *Walters v. Linhof*, 559 F.Supp. 1231, 1236 (D.Colo.1983); *Fort v. Holt*, 508 P.2d 792, 794 (Colo.App. 1973). It injures a person's reputation and reflects poorly upon his or her character. *Id.* (both cites).

Written defamation is libel. The elements of a libel claim are: (1) a written defamatory statement of and concerning the plaintiff; (2) published to a third party; (3) with the publisher's fault amounting to at least negligence; and (4) either actionability of the statement irrespective of special damages or the existence of special damages caused by the publication.[8] *Walters*, 559 F.Supp. at 1235.

Libel is characterized either as *per se* or *per quod*. To be libelous *per se*, a statement:

"must contain defamatory words *specifically directed at the person claiming injury*, which words must, on their face, and without the aid of intrinsic proof, be unmistakably recognized as injurious." *Lininger v. Knight*, 123 Colo. 213, 226 P.2d 809, 813 (Colo.1951) (emphasis added); *see also Inter–State Detective Bureau, Inc. v. Denver Post, Inc.*, [29 Colo. App. 313] 484 P.2d 131, 133 (Colo.App. 1971).

Libel *per se* is actionable without an allegation of actual damages. *Inter–State Detective*, 484 P.2d at 133. A court decides the legal question whether a writing constitutes libel *per se. Id.; Lininger*, 226 P.2d at 813.

Any libel that, unlike libel *per se*, does not carry a defamatory imputation on its face is libel *per quod* which is actionable only where special damages are pleaded. *See, e.g., Lind v. O'Reilly*, 636 P.2d 1319,

---

7. I reject, as a misstatement of controlling law, the plaintiffs' assertion that "because the harm suffered by Plaintiffs was foreseeable, a special relationship exists between the parties and the Defendants owed a duty to the Plaintiffs." (Plaintiffs' response to Arapahoe County's motion, p. 9). The Colorado Supreme Court has specifically rejected that assertion. *See Perreira v. State*, 768 P.2d 1198, 1209 (Colo.1989).

8. I note that, for purposes of the sixth claim, the plaintiffs are not "public figures," and therefore proof of actual malice is not required. *See Walters*, 559 F.Supp. at 1235 (one does not become public figure merely because media attention attracted).

1321 (Colo.App.1981); *Inter–State Detective*, 484 P.2d at 133. Libel *per quod* exists where the person to whom the defamatory statement applies can only be ascertained by introducing extrinsic proof. *Lind,* 636 P.2d at 1320.

■■■■■ "Special damages" are limited to specific monetary losses that a plaintiff incurs because of the defamatory publication. *Id.* at 1321. They do not include injuries to a plaintiff's reputation or feelings which do not result in monetary loss. *Id.* Rather special damages must result "from conduct of a person other than the defamer or the one defamed and must be legally caused by the defamation." *Id. (citing* Restatement (Second) of Torts § 575, comment (b)).

In light of the above legal standards, I cannot conclude that the allegedly defamatory statement constitutes libel *per se.* Publication of the conclusion of the police and coroner that Lawrence Ocrant's death was a "probable suicide" is a statement specifically directed at the *deceased,* not the plaintiffs. While that statement may reflect on the family's name, it is not itself a writing that tends to hold the plaintiffs up to public hatred, contempt or ridicule. Nor does it reflect adversely on their character or reputations.

■■■■ Thus, if the alleged defamation constitutes libel at all, it must meet the standards of *libel per quod.* Plaintiffs, however, have failed to plead special damages. (*See* amended complaint, p. 12–13). Accordingly the sixth claim alleging defamation must be dismissed.[9]

d. Seventh Claim: Outrageous Conduct.

■■■■ Defendants have moved to dismiss the plaintiffs' seventh claim asserting outrageous conduct. Liability for outrageous conduct has been found:

"only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to exclaim, 'Outrageous!' " *Rugg v. McCarty,* 173 Colo. 170, 476 P.2d 753, 756 (Colo.1970) (*quoting* Restatement (Second) of Torts § 46, comment d (1965)).

Typically, to state an outrageous conduct claim, a plaintiff must allege either a pattern of conduct calculated to cause emotional distress or a sufficiently egregious isolated incident. *Price v. Federal Express Corp.,* 660 F.Supp. 1388, 1395 (D.Colo. 1987).

Plaintiffs have alleged conduct that, in the context of all the trial evidence, a jury could deem outrageous. The motions to dismiss the seventh claim therefore must be denied.

### 4. Pendent Jurisdiction.

■■■■ Sueann Ocrant and Greenwood urge this court not to exercise pendent jurisdiction over the plaintiffs' state law claims.[10] The United States Supreme Court has stated that:

"[I]f, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in the federal courts to hear the whole.

That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to the litigants...." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) (emphasis in original).

---

**9.** Sueann Ocrant's motion for a more definite statement of the sixth claim is thus moot.

**10.** Because the fifth and sixth claims must be dismissed, the defendants' argument is directed only to pendent jurisdiction over the fourth and seventh claims.

I conclude that judicial economy, convenience and fairness to the litigants would be served by hearing the plaintiffs' fourth and seventh state tort claims together with the federal claims asserted. This court will therefore exercise pendent jurisdiction over those claims, and deny the defendants' motions to dismiss them.

Accordingly, IT IS ORDERED that:

(1) the City of Greenwood Village's motion to strike the plaintiffs' prayer for punitive damages is denied as moot because the plaintiffs have withdrawn that prayer;

(2) the defendants' motions to dismiss are granted in part and denied in part;

(3) on the parties' stipulation, the claims and action as against Kohnke, Barnard and Gould have been dismissed. Accordingly, Greenwood's motion to dismiss the federal claims asserted against Kohnke and Barnard in their official capacities is denied as moot;

(4) the plaintiffs' claims and action against Gates in his official capacity are dismissed *sua sponte*. Plaintiffs promptly shall amend the case caption accordingly;

(5) Arapahoe County's and Greenwood's motions to dismiss the first and second claims as against the Arapahoe County Coroner's Office and the Greenwood Village Police Department are granted. Plaintiffs' first and second claims are dismissed to the extent those claims seek to impose direct liability on those defendants. Within eleven days of this order's date, the plaintiffs may amend their complaint to properly name as a § 1983 defendant the Board of County Commissioners of Arapahoe County, Colorado;

(6) Greenwood's motion to dismiss the first and second claims as against Gates and Sexton are denied;

(7) Arapahoe County's and Greenwood's motions to dismiss the first and second claims as against Arapahoe County and the City of Greenwood Village are denied without prejudice.

The parties are granted fifteen days from this order's date to file briefs and any appropriate motions on the issues whether the first and second claims are stated against Arapahoe County and the City of Greenwood Village consistent with *Monell* and its progeny. Alternatively, and on the condition that they notify the defendants within five days after this order's date, the plaintiffs may file an amended complaint within eleven days (if justified by the law and facts) to clearly and properly allege the first and second claims against these government defendants;

(8) Sueann Ocrant's motion to dismiss the first and second claims is denied;

(9) Sueann Ocrant's, Arapahoe County's and Greenwood's motions to dismiss the third claim are granted, and the third claim is dismissed;

(10) Sueann Ocrant's and Arapahoe County's motions to dismiss the plaintiffs' federal and state law claims as time barred are denied;

(11) Greenwood's motion to dismiss the plaintiffs' federal claims as against Gates and Sexton on qualified immunity grounds is denied;

(12) Arapahoe County's motion to dismiss the plaintiffs' state tort claims based on statutory governmental immunity is granted. Plaintiffs' state tort claims as against the City of Greenwood Village are dismissed *sua sponte* on the same ground;

(13) Sueann Ocrant's, Arapahoe County's and Greenwood's motions to dismiss the fifth and sixth claims are granted. The fifth and sixth claims are dismissed;

(14) Sueann Ocrant's, Arapahoe County's and Greenwood's motions to dismiss the fourth and seventh claims are denied;

(15) Sueann Ocrant's and Greenwood's motions to dismiss for lack of pendent jurisdiction are denied;

(16) because the plaintiffs have withdrawn the fifth claim as against

Sueann Ocrant and the fifth and sixth claims have been dismissed, Sueann Ocrant's motion for a more definite statement of those claims is denied as moot;

(17) the parties and their counsel are ordered to meet and confer within eleven days of this order in a good faith attempt to settle the case without further litigation, expense or delay. The parties shall report to this court in writing within fifteen days of this order, stating the results of their settlement negotiations and whether a conference before a Magistrate Judge or some other alternative dispute resolution proceeding, would facilitate settlement.